UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SHAWANA SANDERS, on their own and on behalf of all similarly situated individuals and KENYATTA WILLIAMS, on their own and on behalf of all similarly situated individuals,

    Plaintiffs,

v.                                Case No: 2:18-cv-555-FtM-99CM

GLOBAL RADAR ACQUISTION, LLC, d/b/a GLOBAL HR RESEARCH, a foreign for-profit corporation, f/k/a RADAR POST-CLOSING HOLDING COMPANY, INC., f/k/a GLOBAL HR RESEARCH, INC.,

    Defendant.

___

**OPINION AND ORDER**

This matter comes before the Court on defendant's Motion to Dismiss Plaintiffs' Amended Complaint (Doc. #23) filed on October 26, 2018. Plaintiffs filed a Response in Opposition (Doc. #29) on November 30, 2018. For the reasons set forth below, the Motion is denied.

**I.**

This is a fair credit reporting case relating to employment background checks that seeks to hold defendant Global HR Research liable for failing to obtain certain certifications required by

the Fair Credit Reporting Act, 15 U.S.C. § 1601 et seq. (FCRA). The case has been filed as a putative nationwide class action. The issue presented here is whether plaintiffs have Article III standing to pursue such a claim.

Plaintiffs were employed by non-party Naples Hotel Group, LLC but were terminated from employment based on the contents of their consumer reports (often called "background checks") provided to the hotel by defendant Global HR, a consumer reporting agency. Plaintiffs do not allege that the information in the reports was inaccurate. Instead, plaintiffs allege that Global HR failed to obtain certain certifications from Naples Hotel Group required by the FCRA before providing the reports. Originally filed in state court before removal, plaintiffs are currently proceeding on a one-count Amended Complaint (Doc. #20) for "failure to obtain certification prior to furnishing a consumer report for employment purposes in violation of 15 U.S.C. § 1681b(b)(1)(A)."

Defendant argues that the Amended Complaint (Doc. #20) should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1)[1]

---

[1] "Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction can be asserted on either facial or factual grounds." Carmichael v Kellogg, Brown & Root Serv., Inc., 572 F.3d 1271, 1279 (11th Cir. 2009). On factual attack, the Court is free to consider matters outside the pleadings – such as testimony and affidavits – in order to determine whether it has jurisdiction to hear the case. See Lawrence v. Dunbar, 919 F.2d 1525, 21529 (11th Cir. 1990). Here, defendant presents no matters outside the pleadings and the Court assumes their attack is facial. "On a facial attack, a plaintiff is afforded safeguards similar to those

for lack of Article III standing. Specifically, defendant asserts that plaintiffs fail to allege that any of their actions caused plaintiffs concrete harm that is fairly traceable to Global HR, as required by Spokeo, Inc. v. Robins, 136 S. Ct. 1540 (2016) and its progeny. Plaintiffs respond that defendant violated their right to privacy by compiling their personal, private, and sensitive information into a consumer report and furnishing it to Naples Hotel Group without a permissible purpose, since Global HR did not follow the FCRA protections in place to protect such sensitive information.[2]

## II. The Amended Complaint

The Court first outlines plaintiffs' FCRA claim as set forth in the Amended Complaint.

Naples Hotel Group operates hotels in several states and used the services of an organization that provides employee staffing and leasing services under the trade names "Oasis Outsourcing" and "A1 HR" (collectively, "A1 HR"). (Doc. #20, ¶¶ 6, 7.) A1 HR leases employees to their employer-clients, providing an array of

---

provided in opposing a Rule 12(b)(6) motion – the court must consider the allegations of the complaint to be true." Id. at 1529.

[2] Plaintiffs also allege that they suffered an "informational injury"; were deprived of their ability to contest or discuss with Naples Hotel Group the content of their consumer reports; and that Global HR was unjustly enriched by selling plaintiffs' consumer reports to Naples Hotel Group when defendant had no statutory basis on which to release the reports. (Doc. #20, ¶ 42.)

administrative services and insurance coverages. (Id., ¶ 6.) A1 HR's clients, including Naples Hotel Group, make their own hiring and firing decisions. (Id.) As an A1 HR client, Naples Hotel Group could use Global HR's online portal to obtain consumer reports for employment purposes. (Id., ¶ 8.)

Naples Hotel Group required that plaintiffs sign documents titled "Notice and Acknowledgment", purportedly authorizing Naples Hotel Group to procure their consumer reports for employment purposes. (Doc. #20, ¶ 24.) Global HR supplied the "Notice and Acknowledgement" forms, which plaintiffs allege did not comply with the FCRA. (Id., ¶ 31.) Naples Hotel Group used A1 HR's web-based portal to obtain plaintiffs' consumer reports from Global HR; however, Naples Hotel Group never certified compliance with the FCRA before obtaining the consumer reports from Global HR. (Id., ¶¶ 27-28.)

The FCRA provisions that plaintiffs allege Global HR violated by providing consumer reports for employment purposes without certification from A1 HR's clients that they would abide by FCRA's disclosure, authorization, and notice requirements are at 15 U.S.C. § 1681b(b)(1)(A)(i)-(ii), (b)(2), and (b)(3) (Doc. #20, ¶ 12). These provisions state:

**(b) Conditions for Furnishing and Using Consumer Reports for Employment Purposes**

**(1) Certification from User**[3] – A consumer reporting agency may furnish a consumer report for employment purposes only if –

> **(A)** the person who obtains such report from the agency certifies to the agency that –
>
>> **(i)** the person has complied with paragraph (2) with respect to the consumer report, and the person will comply with paragraph (3) with respect to the consumer report if paragraph (3) becomes applicable; and
>>
>> **(ii)** information from the consumer report will not be used in violation of any applicable Federal or State equal employment opportunity law or regulation . . .

**(2) Disclosure to Consumer**

> **(A) In general** – Except as provided by subparagraph (B), a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless –
>
>> **(i)** a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and

---

[3] The "User" who obtained the report here is Naples Hotel Group.

> > **(ii)** the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.
>
> **\* \* \***
>
> **(3) Conditions on Use for Adverse Actions**
>
> > **(A) In general** – Except as provided by subparagraph (B), in using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates –
> >
> > > **(i)** a copy of the report; and
> > >
> > > **(ii)** a description in writing of the rights of the consumer under this subchapter, as prescribed by the Bureau under section 1681g(c)(3) of this title.

Plaintiffs allege they were terminated on October 5, 2016 based upon the consumer reports Global HR unlawfully furnished to Naples Hotel Group and were never provided with pre-adverse action notification required by the FCRA. (Doc. #20, ¶ 33.) They further allege that Global HR invaded their "right of privacy" by providing their confidential information without proper authorization.

Plaintiffs sue on behalf of a putative class consisting of:

> All employees and job applicants in the United States who were the subject of a consumer report furnished by Global HR Research that was provided without the user's certification of compliance with 15 U.S.C. § 1681b(b)(2)

and 15 U.S.C. § 1681b(b)(3), within five years of the
filing of this lawsuit through the date of final judgment
in this action.

(Doc. #20, ¶ 14.)  Plaintiffs allege that defendant willfully violated the FCRA.  (Id., ¶¶ 50-56.)

### III. FCRA and Article III Standing

Congress created the Fair Credit Reporting Act in 1970 "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy."  Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 52 (2007).  In pursuit of this goal, the Act "imposes a host of requirements concerning the creation and use of consumer reports," Spokeo, 136 S. Ct. at 1545, and makes any consumer reporting agency that willfully violates one of these requirements with respect to a consumer liable to that consumer for actual, statutory, or punitive damages, 15 U.S.C. § 1681n(a).  Congress was concerned that employers' authority to obtain consumer reports on job applicants "may create an improper invasion of privacy."  S. Rep. No. 104-185, at 35 (1995).  The stand-alone disclosure requirement is designed to decrease the risk of a job applicant unknowingly providing consent to the dissemination of his or her private information.  Id.

Even a plaintiff who has statutory standing (i.e., has stated a cause of action) must have constitutional standing to bring the claim.  This threshold requirement "must be addressed prior to and independent of the merits of a party's claims."  Common Cause/Ga.

v. Billups, 554 F.3d 1340, 1349 (11th Cir. 2009) (citation omitted).

To establish Article III standing, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, 136 S. Ct. at 1547 (citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992)). See also Bank of America Corp. v. City of Miami, Florida, 137 S. Ct. 1296, 1302 (2017); Nicklaw v. Citimortgage, Inc., 839 F.3d 998, 1001-02 (11th Cir. 2016). Defendant asserts that plaintiffs fail to sufficiently plead the first and second requirements.

**(1) Injury in Fact**

Relying mainly on Spokeo, defendant argues that plaintiffs have only alleged a bare procedural violation of the statute, without any resulting harm, which is per se insufficient to establish standing. Plaintiffs respond that they have standing in part based upon an invasion of privacy theory, and not upon a bare procedural statutory violation.

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Spokeo, 136 S. Ct. at 1548 (quoting Lujan, 504 U.S. at 560). In Spokeo, the plaintiff filed

a class-action complaint, alleging certain procedural violations of the FCRA against an online "people search engine" operator accused of creating inaccurate consumer reports. 136 S. Ct. at 1544. The Spokeo case primarily concerned the injury-in-fact element, addressing the "concrete injury" requirement. The Supreme Court noted that a "concrete injury" "must be 'de facto'; that is, it must actually exist." 136 S. Ct. at 1548. But the Supreme Court also recognized that "concrete" does not necessarily mean "tangible," and "intangible injuries can nevertheless be concrete." Id. "In determining whether an *intangible* harm constitutes injury in fact, both history and the judgment of Congress play important roles." Id. (emphasis added). "[I]t is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." Id. And Congress may "elevate to the status of legally cognizable injuries concrete, de facto injuries that were previously inadequate in law." Id. (alteration adopted) (quoting Lujan, 504 U.S. at 578). An injury is "particularized" if it "affect[s] the plaintiff in a personal and individual way." Id. at 1548 (quoting Lujan, 504 U.S. at 560 n.1).

The Supreme Court also recognized that a plaintiff does not automatically satisfy the injury-in-fact requirement "whenever a statute grants a person a statutory right and purports to authorize

that person to sue to vindicate that right." Id. at 1549. For example, a plaintiff could not allege a "bare procedural violation" absent harm and satisfy the injury-in-fact requirement.[4] Id.

In Church v. Accretive Health, Inc., 654 F. App'x 990 (11th Cir. 2016) (per curium), the Eleventh Circuit examined whether a plaintiff had standing to bring a claim under the FDCPA arising from receipt of a letter advising her that she owed a debt, but not including certain disclosures required by the FDCPA. The Eleventh Circuit first addressed defendant's argument that "Church's injury [was] not sufficiently concrete to support Article III standing because Church incurred no actual damages from Accretive Health's violation of the FDCPA." Id. at 992. The Eleventh Circuit stated:

> The FDCPA creates a private right of action, which Church seeks to enforce. The Act requires that debt collectors include certain disclosures in an initial communication with a debtor, or within five days of such communication. The FDCPA authorizes an aggrieved debtor to file suit for a debt collector's failure to comply with the Act. Thus, through the FDCPA, Congress has created a new right — the right to receive the required disclosures in communications governed by the FDCPA — and a new injury — not receiving such disclosures.
>
> It is undisputed that the letter Accretive Health sent to Church did not contain all of

---

[4] The Spokeo court cited an agency's dissemination of a wrong consumer zip code as an example of a statutory violation for which the FCRA purports to provide redress, but which likely causes harm too "abstract" to confer standing. 136 S. Ct. at 1550.

>            the FDCPA's required disclosures. Church has
>            alleged that the FDCPA governs the letter at
>            issue, and thus, alleges she had a right to
>            receive the FDCPA-required disclosures.
>            Thus, Church has sufficiently alleged that she
>            has sustained a concrete — i.e., "real" —
>            injury because she did not receive the
>            allegedly required disclosures. The invasion
>            of Church's right to receive the disclosures
>            is not hypothetical or uncertain; Church did
>            not receive information to which she alleges
>            she was entitled. While this injury may not
>            have resulted in tangible economic or physical
>            harm that courts often expect, the Supreme
>            Court has made clear an injury need not be
>            tangible to be concrete. Rather, this injury
>            is one that Congress has elevated to the
>            status of a legally cognizable injury through
>            the FDCPA. Accordingly, Church has
>            sufficiently alleged that she suffered a
>            concrete injury, and thus, satisfies the
>            injury-in-fact requirement.

Id. at 994-95 (internal footnotes and citations omitted).

Here, the injuries alleged in the Amended Complaint are not mere "procedural" statutory violations; rather, they are precisely a kind of harm the FCRA aims to prevent. Namely, the distribution of consumer reports without the proper, required disclosures. In enacting the FCRA, Congress was expressly concerned about protecting consumer privacy, and therefore required consumer reporting agencies to comply with the strictures they set forth. The statute specifically states that a consumer reporting agency may furnish a consumer report "only if" it certifies that certain conditions have been met including disclosure to consumers and

that the user will comply with certain requirements before taking adverse action against the consumer.

"The actual or threatened injury required by Art. III may exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing . . . .'" Warth v. Seldin, 422 U.S. 490, 500 (1975) (quoting Linda R.S. v. Richard D., 410 U.S. 614, 617 n.2 (1973)). Here, the FCRA is a consumer protection statute in which Congress conferred upon all consumers the right to protection of their private information unless certain conditions and procedures were followed which plaintiffs seek to enforce. Congress "has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed [at common law] before." Spokeo, 136 S. Ct. at 1549. Thus, the Court finds that based on the allegations that plaintiffs' consumer reports were divulged even though the FCRA was not adhered to, plaintiffs have alleged a particularized and concrete injury sufficient to confer Article III standing.[5] See Church, 654 F. App'x at 994-95 (not receiving information to which one is statutorily entitled is a "concrete" injury).

---

[5] Because the Court has determined that invasion of privacy is a sufficient injury to establish constitutional standing, plaintiffs' remaining allegations of harm, including informational injury, deprivation of their ability to contest or discuss with Naples Hotel Group the content of their consumer reports, and unjust enrichment need not be addressed.

**(2) Fairly Traceable**

The Court next determines whether plaintiffs' injury is fairly traceable to Global HR's actions. See Bank of Am. Corp., 2017 WL 1540509, at *6. This requirement is satisfied when the claimed injury flows from defendant's conduct. Mulhall v. UNITE HERE Local 355, 618 F.3d 1279, 1290 (2010). "Even a showing that a plaintiff's injury is indirectly caused by a defendant's actions satisfies the fairly traceable requirement." Resnnick v. AvMed, Inc., 693 F.3d 1317, 1324 (11th Cir. 2012).

Defendant argues that Naples Hotel Group's conduct breaks the causal chain, relieving them of any duty it has to plaintiffs under the FCRA. Defendant relies on Frazier v. First Advantage Background Services Corp., Civ. No. 3:18cv30, 2018 WL 4568612 (E.D. Va. Sept. 24, 2018), a non-published, non-binding district court opinion. The Frazier case involved similar facts to this case and found that even if the injuries plaintiff suffered from the allegedly inadequate disclosure and authorization forms were concrete enough to constitute an injury in fact, plaintiff did not plead facts sufficient to support a reasonable inference that the injuries were fairly traceable to the actions of defendant because an intermediary stood directly between plaintiff and the challenged conduct that breaks the causal chain. Id. at *9. Even so, the FCRA does not limit a consumer's private right of action to those offenders with whom consumers have direct contact.

Although the Eleventh Circuit has not spoken definitely on this exact issue, the Eleventh Circuit has stated that "even a showing that a plaintiff's injury is indirectly caused by a defendant's actions satisfied the fairly traceable requirement." Resnick, 693 F.3d at 1324. That standard has been satisfied here, and the Court declines defendant's invitation to look elsewhere.

Plaintiffs' allegations are sufficient to "fairly trace" their injuries to Global HR's actions. Plaintiffs allege that defendant provided the consumer reports without the required authorizations (which the Court accepts as true) in violation of the FCRA. Thus, plaintiffs have satisfied this element of standing.

Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

Defendant's Motion to Dismiss Plaintiffs' Amended Complaint (Doc. #23) is **DENIED.**

**DONE and ORDERED** at Fort Myers, Florida, this __7th__ day of January, 2019.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record