## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

SHAWANA SANDERS and KENYATTA
WILLIAMS on their own behalf and on behalf
of all similarly situated individuals,

      Plaintiffs,

v.                                                                    Case No.: 2:18-cv-00555-UA-CM

GLOBAL RADAR ACQUISITION, LLC d/b/a
GLOBAL HR RESEARCH,
a foreign for-profit corporation,
f/k/a RADAR POST-CLOSING HOLDING
COMPANY, INC., f/k/a
GLOBAL HR RESEARCH, INC.,

      Defendant.

_____/

## PLAINTIFFS' CONSENT MOTION FOR PRELIMINARY
## APPROVAL OF SETTLEMENT AND NOTICES TO SETTLEMENT CLASS

Pursuant to Federal Rule if Civil Procedure 23, Plaintiffs KENYATTA WILLIAMS and

SHAWANA SANDERS ("Plaintiffs"), on their own behalf and all similarly situated individuals,

with the consent of Defendant GLOBAL RADAR ACQUISITION, LLC, ("Defendant"), move

the Court for Preliminary Approval of Settlement and Notices to Settlement Class. In support of

their Motion, Plaintiffs state as follows:

**I.**      **NATURE AND STAGE OF PROCEEDINGS.**

      **A.**      **Background Of The Litigation.**

In their Amended Class Complaint, Plaintiffs allege that Defendant willfully violated

Section 1681b(b)(1) of the Fair Credit Reporting Act ("FCRA") relating to the provision of

consumer reports (commonly known as background checks) for employment purposes. (ECF 20

¶¶ 1–13.) The FCRA requires that consumer reporting agencies ("CRAs") like Defendant obtain

from their customers certifications of compliance with 15 U.S.C. §§ 1681b(b)(2) and (b)(3) before the CRA may issue a background check. *See* 15 U.S.C. § 1681b(b)(1). Plaintiffs allege Defendants failed to meet this requirement for multiple employers, causing violations of the FCRA with each report sold not only for Plaintiffs, but for thousands of members of a putative class. (ECF 20 ¶¶ 1–15.)

Defendant moved to dismiss, arguing that Plaintiffs had not suffered an Article III injury and therefore lacked standing to pursue these claims. (ECF 23.) Plaintiffs opposed, arguing that the injury suffered here was sufficient to confer Article III standing. (ECF 29.) The Court agreed with Plaintiffs, finding they have Article III standing and denying Defendant's Motion. (ECF 30.)

Following the Court's decision on the Motion to Dismiss, the Parties engaged in written discovery, exchanged documents, and also exchanged information informally.  Plaintiffs served interrogatories and requests for production, to which Defendant responded. This discovery informed what would become a key aspect of the mediation and settlement, as it revealed that Defendant had sold reports under circumstances like Plaintiffs' to only three employer-clients, rather than as to all of its customers. This fact then resulted in the Parties negotiating a settlement only as to applicants with those three employers rather than everyone on whom Defendant ran and sold a background check.

With this information in hand, the Parties participated in a full-day mediation in Tampa, Florida on May 3, 2019, under the supervision of Rodney Max. As a result of that mediation and the Parties' exchange of information a settlement was struck, which the Parties present herein for the Court's consideration.

B.      **The Settlement Terms.**

The parties engaged in informal settlement discussions and exchanges of information before their May 3 mediation. The mediation was fruitful, with Mr. Max providing tremendous assistance at bridging the key divides among the Parties.. The Parties thereafter executed a Class Settlement Agreement and Release attached to this motion as Exhibit 1 (the "Agreement").  The Agreement, which the Parties request the Court approve, provides for settlement under the following key terms:

- Certification, for settlement purposes only, of a Class of all natural persons residing in the United States, any U.S. territory, the District of Columbia, or Puerto Rico who were the subject of a consumer report furnished by Global HR for employment purposes to a client of A1 HR, Continuum, or Accesspoint between July 11, 2013 and January 11, 2019, a class of approximately 20,878 people.

- Defendant agrees to establish a gross settlement fund in the amount of $3,653,650, none of which will revert to Defendant except to potentially repay costs of settlement administration.

- Every Settlement Class member will be paid a pro rata portion of the net settlement fund without having to file a claim. It is estimated each Class Member will receive a payment of approximately $117.50, without further reduction for attorneys' fees or administration costs.

- Payment from the settlement fund of an attorneys' fees and costs award, if approved by the Court, not to exceed thirty-three percent of the gross settlement fund;

- Defendant will separately pay costs associated with administration of the settlement, estimated to be up to seventy-five-thousand dollars ($75,000). Before any unclaimed funds are distributed to Court-approved *cy pres* recipients, Defendant may recoup these costs up to $75,000.

- Payment from the settlement fund of service awards of $5,000 to each of the Named Plaintiffs.

II.     **STATEMENT OF ISSUES.**

The issues before the Court are (a) whether to approve the Agreement on a preliminary basis, and (b) whether to approve the Notice of Proposed Class Action Settlement for distribution to members of the Class.

III.    **THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED.**

A.      **The Law Governing Preliminary Approval.**

The Eleventh Circuit has recognized that "[p]ublic policy strongly favors the pretrial settlement of class action lawsuits." *In re United States Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992); *see also Gevaerts v. TD Bank, N.A.*, No. 11:14-cv-20744-RLR, 2015 WL 6751061, at *4 (S.D. Fla. Nov. 5, 2015) ("Federal courts have long recognized a strong policy and presumption in favor of class action settlements."). Settlement "has special importance in class actions with their notable uncertainty, difficulties of proof, and length. Settlements of complex cases contribute greatly to the efficient utilization of scarce judicial resources, and achieve the speedy resolution of justice." *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 538 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990) (citations omitted). As a general matter, "unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." 4 ALBA CONTE & HERBERT NEWBERG, NEWBERG ON CLASS ACTIONS §11.50, at 155 (4th ed. 2002).

"'At the preliminary approval stage, the Court's task is to evaluate whether the Settlement is within the "range of reasonableness.' 4 NEWBERG ON CLASS ACTIONS § 11.26 (4th ed. 2010). 'Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason.' *Smith v. Wm. Wrigley Jr. Co.,* 2010 WL 2401149, at *2 (S.D. Fla. Jun. 15, 2010)."

*Almanzar v. Select Portfolio Servicing, Inc.*, No. 1:14-cv-22586-FAM, 2015 WL 10857401, at *1

(S.D. Fla. Oct. 15, 2015).  This Court has set forth the following process for preliminary approval

of a class action settlement:

> Rule 23(e), Federal Rules of Civil Procedure, permits approval of a class action settlement if the settlement is "fair, reasonable, and adequate." *See Strube v. Am. Equity Inv. Life Ins. Co.,* 226 F.R.D. 688, 697 (M.D. Fla. 2005) (Fawsett, J.). Approval is generally a two-step process in which a "preliminary determination on the fairness, reasonableness, and adequacy of the proposed settlement terms" is reached. *See* DAVID F. HERR, ANNOTATED MANUAL FOR COMPLEX LITIGATION § 21.632 (4th ed. 2008). The factors considered are (1) the influence of fraud or collusion on the parties' reaching a settlement, (2) "the likelihood of success at trial," (3) "the range of possible recovery," (4) "the complexity, expense[,] and duration of litigation," (5) "the substance and amount of opposition to the settlement," and (6) "the stage of proceedings at which the settlement was achieved." *Bennet v. Behring Corp.,* 737 F.2d 982, 986 (11th Cir.1984).

*Holman v. Student Loan Xpress, Inc.*, 2009 WL 4015573, at *4 (M.D. Fla. Nov. 19, 2009)

(Merryday, J.).

### 1.    The Settlement Agreement is not the product of fraud or collusion.

In assessing this factor, courts must presume that no fraud or collusion occurred unless

there is evidence to the contrary. *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 287 (W.D. Tex.

2007). There is no evidence of fraud or collusion here. The proposed settlement in the Agreement

resulted from arm's-length negotiations between Plaintiffs and Defendant conducted by capable,

experienced attorneys. The Parties reached an agreement on extremely favorable terms for the

Class after sufficient discovery and a full-day mediation conducted before a nationally respected

neutral. "Where the parties have negotiated at arm's length, the Court should find that the

settlement is not the product of collusion." *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D.

683, 692 (S.D. Fla. 2014). There was no fraud or collusion in reaching the Settlement, and nothing

of the kind could be suggested. During this process, the parties exchanged information and

settlement postures before the mediation took place, and Mr. Max's participation and supervision

ensures that the Settlement is the result of appropriate, meaningful discussions with both sides advocating for their clients' positions. The Parties thoroughly evaluated their claims and defenses, and presented them before and during the mediation. Ultimately, Class Counsel obtained what they believe is an excellent settlement on behalf of the Settlement Class.

Additionally, there is no evidence that Plaintiffs sacrificed the interests of the Settlement Class for their own financial gain. Under the Agreement, Plaintiffs will receive the same settlement payment as the other members of the Settlement Class. That sum, $117.25, eclipses the bottom of the $100 to $1,000 range of potential statutory-damage recovery in the FCRA, and will be paid without the need for any Class Member to file a claim, show actual damages, or prove willfulness. *See* 15 U.S.C. § 1681n. Put differently, if this case went through complete litigation and a trial, there is no guarantee that Plaintiffs could recover more for Class Members than they have through this Settlement even with a complete and compelling victory at trial. And, Plaintiffs will only request a modest service award of $5,000.

The proposed Settlement reached by Plaintiffs and Defendant resulted from concessions and compromise by the Parties. The Agreement is a product of the functioning of the adversarial and negotiation processes, not fraud or collusion. Accordingly, the first factor supports approval of the settlement.

> **2.      Litigating this case through trial would be complex, expensive, and resource-consuming.**

Although the total expenses that the Parties will incur if this litigation progresses and the duration of the litigation, including the appellate process, cannot be predicted with certainty, Plaintiffs and Defendant would vigorously advocate for their respective positions on various legal and factual issues that would likely entail significant additional discovery and motion practice. Defendant denies liability for any violations of the FCRA and asserted numerous affirmative

defenses to Plaintiffs' individual and alleged class claims.

Furthermore, should Plaintiffs prevail on a contested motion for class certification, the Parties expect to incur significant expenses for decertification and likely Rule 23(f) appeal of the certification decision; two issues where Plaintiffs' and Defendant's positions differ. Trial, post-trial motions, and a potential of post-trial appeals further increases the expected costs and delay of litigation. And, as noted above, all of this expense and effort would be expended with no certainty that a complete trial victory for Plaintiffs would result in a higher amount recovered for the Class.

There is no reason to believe that issues raised before, during, or after a trial would be any less vigorously litigated by the Parties or less expensive and time-consuming to resolve. Absent settlement, the resolution of factual issues relevant to each class member's claims would result in protracted litigation. The proposed Settlement will save significant time and resources that would otherwise be spent litigating disputes resolved by the proposed Settlement. Thus, this factor weighs in favor of approving the settlement proposed in the Agreement. *See Bennett,* 737 F.2d at 986 ("In addition, our judgment is informed by the strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement."); *Ayers v. Thompson*, 358 F.3d 356, 2369 (5th Cir. 2004) (holding that settlement would avoid risks and burdens of potentially protracted litigation weighed in favor of approving settlement).

### 3.   Settlement Class Counsel has sufficient documents and other information to realistically value the claims.

The Parties possess "ample information with which to evaluate the merits of the competing positions." *Ayers*, 358 F.3d at 369. Plaintiffs and Defendant cooperated in exchanging documents and information sufficient to allow a well-informed and comprehensive settlement of the claims. Defendant reviewed its records for the relevant time period and determined that the Class consists of 20,878 individuals, including Plaintiffs, spread over three employer-customers of Defendant.

Defendant provided this information to Plaintiffs, along with documents sufficient for Plaintiffs to confirm these claims. Defendant also identified and produced copies of the documents, policies, and procedures that pertain to the allegations in the Complaint.

In addition to this exchange of documents and information, the Parties have extensively analyzed legal authorities regarding FCRA claims on a nationwide basis. Counsel for the Parties have discussed their claims and defenses, as well as the information and authority supporting each with each other, and Mr. Max.

As such, the Parties have sufficient information to reach a fair, reasonable, and adequate settlement. The Agreement was negotiated based on the Parties' realistic, independent assessments of the merits of the claims and defenses in this case, under the supervision of an experienced mediator, and should be approved.

    **4.    Ultimate success on the merits of the claims is uncertain given the risks of litigation.**

When evaluating a proposed class action settlement, the Court must balance the benefits of a certain and immediate recovery through settlement against the inherent risks of litigation. *See Bennett*, 737 F.2d at 986*; Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983). Here, recovery under the Agreement is excellent for the 20,878 Class Members given the general uncertainty surrounding all litigation and the risks specific to this case.

If this litigation proceeds, Defendant intends to continue to vigorously defend the claims, and Plaintiffs and the Settlement Class will face Defendant's challenges to merits of Plaintiffs' claims, class certification, potential decertification, and an appeal on class certification. This short list of course assumes that discovery proceeds without the need for Court involvement in motions to compel and the like, which add expense and resource allocations to the equation. Because the Parties have reached a Settlement now, Plaintiffs have not prevailed on class certification and

summary judgment. Any one of these challenges could significantly prolong the litigation at considerable expense to the Parties, with a victory for Defendant on any one of these motions potentially resulting in no recovery for the Class Members. Each of these phases of litigation presents uncertainty and risks, which the Settlement allows the Parties to avoid and to the benefit of Class Members.

Without this settlement, in order for members of the settlement classes to recover any statutory damages under the FCRA, they must not only prove that Defendant failed to comply with the certification provision, but also that Defendant did so willfully. *See* 15 U.S.C. § 1681n(a). Although Plaintiffs contend that the violations were willful, Defendant will contest the question of willfulness if the lawsuit is further litigated. *See, e.g.*, *Schoebel v. Am. Integrity Ins. Co.*, No. 8:15-cv-380-T-24 AEP, 2015 WL 3407895, at *7 (M.D. Fla. May 27, 2015) (dismissing FCRA standalone disclosure case seeking statutory damages because alleged violation was not willful). And, absent the Settlement, continued certification under the original class definition is not certain. Although Defendant denies liability and has asserted affirmative defenses to the claims, Defendant nevertheless recognizes, as Plaintiffs do, the risks inherent in proceeding to trial.

A negotiated settlement that provides immediate relief is preferable to protracted litigation and an uncertain result in the future. This is particularly true where significant hurdles remain, with Defendant amply represented and able to mount such challenges to Plaintiffs' case. Weighed against the risks associated with litigation, the proposed Settlement is fair, reasonable, and adequate.

**5.    The Settlement Agreement is fair in light of the possible range of recovery and uncertainty of damages.**

The Agreement should be approved because the proposed Settlement compares favorably to the limited range of damages available under the FCRA that could potentially be recovered at

trial. In their Amended Complaint, Plaintiffs seeks to recover compensation under 15 U.S.C. § 1681n(a)(1)(A), (2), and (3) for themselves and the other class members consisting of (a) statutory damages of not less than $100 and not more than $1,000; (b) punitive damages, (c) attorneys' fees and costs.[1] However, as Section 1681n(a) of the FCRA indicates, proof of noncompliance with the requirements of the FCRA alone does not impose liability on a defendant. Recovery of damages under Section 1681n(a) is contingent on establishing that the defendant willfully failed to comply with the FCRA; negligent noncompliance is not sufficient. *Safeco v. Burr*, 127 S. Ct. 2201, 2215 (2007); 15 U.S.C. § 1681n(a). And, even if liability for willful noncompliance is established as Plaintiffs anticipate, the determination as to the size of the award is left to the discretion of the jury, which may return an award of no damages, or the range's lower limit of $100, as possible outcomes.

The settlement proposed in the Agreement secures a monetary payment to each member of the Class of $175 before deductions for service awards and attorneys' fees. After those proposed amounts are deducted, each member of the Class will receive approximately $117.25. A settlement check in even the minimum amount of the statutory damages range is a reasonable and comparable sum of money to be paid in a class action under the FCRA. Even if the Settlement Class established liability against Defendant for willful violations of the pertinent provisions of the FCRA, a real risk exists that the Class Members could recover less after successfully litigating their claims through trial than the payment negotiated by the parties in the Agreement.

---

[1] Section 1681(n)(a) of the FCRA states that a person who willfully fails to comply with any requirement under 15 U.S.C. §§ 1681a–x regarding a consumer is liable to the consumer in an amount equal to the sum (a) "any actual damages sustained by the consumer as a result of the failure *or* damages of not less than $100 and not more than $1,000;" (b) punitive damages in such amount as the court may allow; and (c) the costs of an action, if successful, to enforce liability under this Section plus reasonable attorneys' fees as determined by the court. 15 U.S.C. § 1681n(a)(1)(A), (2)-(3) (emphasis added).

Settlement Class Counsel believes that the proposed minimum payment of approximately $117.25 to each member of the Class is an excellent settlement, providing more relief to class members than other recently approved settlements. *See, e.g.*, *Graham v. Pyramid Healthcare Sols., Inc.*, 8:16-cv-01324-JSM-AAS (M.D. Fla. Oct. 10, 2017) (ECF 65) (preliminarily approving settlement providing $100 for each of approximately 300 class members).

The settlement proposed in the Agreement falls within the reasonable range of possible recovery for members of the Settlement Class. "A proposed settlement need not obtain the largest conceivable recovery for the class to be worthy of approval; it must simply be fair and adequate considering all the relevant circumstances." *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 649 (N.D. Tex. 2010). Balancing the risk that liability cannot be established against Defendant for willful violations of the certification provision of the FCRA against the range of possible recovery of damages supports approving the Settlement.

**6.      Settlement Class Counsel and the Parties support the Settlement.**

As evidenced by the Agreement itself and this Motion in which the Parties together request approval of the Settlement, the terms of the Settlement as proposed have the obvious support of Plaintiffs, Settlement Class Counsel, and Defendant. Plaintiffs and Defendant believe, based on their independent assessments, that Settlement is in their respective best interest. Plaintiffs and Settlement Class Counsel have likewise concluded that the proposed Settlement is in the best interest of the Class.

Furthermore, the Parties anticipate that the Settlement will receive broad support from putative class members, especially considering that each individual member will receive a settlement check that is reasonable and consistent in the context of class action litigation. And those benefits will be distributed without a cumbersome claims process or the need of Class

Members to take any action at all to receive them. Even if applicants in the Settlement Class were able to overcome the difficulties of learning of these claims, financing and finding legal counsel to pursue their relatively small individual claims, few members of the Settlement Classes are likely to be inclined toward pursuing their individual claims because of the small amount at stake.

Therefore, it is unlikely that Settlement Class Members will oppose releasing their pertinent FCRA claims that in reasonable probability they never intended to bring, or were unaware to have possessed. Even if any putative Class Member does not agree with the terms of the proposed settlement, he or she is protected by the right to opt out of the proposed Settlement and retain his or her individual FCRA claims against Defendant rather than participating in the Settlement.

The Parties believe that the Agreement represents a fair, reasonable, and adequate settlement. Consequently, the support of Plaintiffs, Settlement Class Counsel, the expected support of putative Class Members, and Defendant weighs in favor of approving the Settlement.

**B.    The Proposed Class Should be Certified for Settlement Purposes.**

Courts in the Middle District of Florida and elsewhere have previously certified class action lawsuits alleging violations of similar FCRA provisions, in particular 15 U.S.C. § 1681b(b)(2)(A)(i)-(ii). *See, e.g.*, *Graham*, 2017 WL 2799928, at *2; *Coles v. Stateserv Med. of Fla., LLC*, No. 8:17-cv-829-T-17-AEP, (M.D. Fla. April 10, 2017) (ECF 45); *Fosbrink v. Area Wide Protective, Inc.*, No. 8:17-cv-01154-JSM-CPT, (M.D. Fla., May 8, 2018) (ECF 58).  "A class may be certified 'solely for purposes of settlement [if] a settlement is reached before a litigated determination of the class certification issue.'" *Holman*, 2009 WL 4015573, at *2 (quoting *Borcea v. Carnival Corp.,* 238 F.R.D. 664, 671 (S.D. Fla. 2006), internal punctuation omitted). The

proposed Settlement Class here meets the requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(3).

Rule 23(a) imposes four requirements for the certification of any class. First, the class must be so numerous that joinder of all members is impracticable. FED. R. CIV. P. 23(a)(1). That requirement is easily satisfied here, as discovery from Defendant confirms that there are approximately 20,878 Settlement Class Members. *Holman*, 2009 WL 4015573, at *2. Moreover, the identities of the Settlement Class Members (who are job applicants) can be ascertained from records available to Defendant.

Second, there must be "questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). Even a single common issue may suffice. *Williams v. Mohawk Indus., Inc.,* 568 F.3d 1350, 1355 (11th Cir. 2009) ("[C]ommonality requires that there be at least one issue whose resolution will affect all or a significant number of the putative class members.") (internal quotation marks omitted). Under Plaintiff's theory of recovery, that requirement is met by the common questions of (1) whether Defendant violated Section 1681b(b)(1) by providing consumer reports to employers without first obtaining the appropriate certifications of compliance with Sections 1681b(b)(2) and (b)(3); and (2) whether those alleged violations were willful. No more is required for commonality.

Rule 23(a)(3) imposes a "typicality" requirement, which "is satisfied by showing the existence of 'a sufficient nexus . . . between the claims of the named representative and those of the class at large.'" *Holman*, 2009 WL 4015573, at *2 (quoting *Hines v. Widnall,* 334 F.3d 1253, 1256 (11th Cir. 2003)). Typicality is met here because the claims of the named Plaintiffs and those of the Settlement Class Members all stem from the same basic facts and legal theory—they were the subject of an employment background check, which Defendant provided without having the

13

appropriate certifications from the recipients. *See Kornberg*, 741 F.2d at 1337 (finding typicality satisfied where claims "arise from the same event or pattern or practice and are based on the same legal theory"). Further, Plaintiffs seek the same relief on their own behalf and on behalf of each Settlement Class member, *i.e.*, statutory damages available under the FCRA.

The final 23(a) requirement is "adequacy," which is met if (1) "'plaintiffs' counsel are qualified, experienced, and generally able to conduct the proposed litigation'" and (2) the plaintiffs lack "'interests antagonistic to those of the rest of the class.'" *Holman*, 2009 WL 4015573, at *2 (quoting *Kirkpatrick v. J.C. Bradford & Co.,* 827 F.2d 718, 726 (11th Cir. 1987)). Both of those criteria are met here. Plaintiffs' Counsel and their Firms are experienced in class action litigation and, specifically, in litigating claims under the FCRA.  (*See* Exs. 2 and 3 (Declarations of Craig Marchiando and Marc Edelman).) Plaintiffs have no interests antagonistic to those of the Settlement Class, nor have they sold out the Class's interests for their own benefit.

In addition to Rule 23(a), a class must satisfy the requirements of one of the types of class actions authorized by Rule 23(b). Here, the Settlement Class meets the requirements of Rule 23(b)(3). The common questions identified above predominate over any individual questions that might be identified. FED. R. CIV. P. 23(b)(3) (explaining the Court must find that "the questions of law or fact common to class members predominate over any questions affecting only individual class members"). Whether Defendant violated Section 1681b(b)(1) by providing consumer reports without the proper certifications from its employer-clients is an over-arching common issue that is critical to determining liability.

Further, in the context of this Settlement, there is no question that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Id.* "Confronted with a request for settlement-only class certification, a district court need not inquire whether the

case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Administration of a single, comprehensive Settlement would be superior to multiple individual lawsuits asserting the same claims, assuming consumers could even learn of their claims. The latter is particularly true in a case like this one, as consumers would not likely learn of their claims because the certification a CRA obtains from a user of consumer reports is typically not revealed to consumers outside of discovery in a lawsuit.

**C.    Plaintiffs' Counsel Should be Appointed as Class Counsel and Plaintiffs Appointed as Class Representatives.**

Plaintiffs' Counsel initially identified, investigated and asserted the claims of Plaintiffs and the Settlement Class, and, as set forth above, continued to prosecute and investigate those claims throughout the discovery period. *See* FED. R. CIV. P. 23(g)(1) (directing court appointing class counsel to consider "work counsel has done in identifying or investigating potential claims in the action"). As set forth in Exhibits 2 and 3, Plaintiffs' Counsel has "experience in handling class actions" and "other complex litigation," including "the types of claims asserted in [this] action." FED. R. CIV. P. 23(g)(1)(A)(i), (ii); (Exs. 2, 3). In fact, this Court has approved Plaintiffs' Counsel as class counsel in several FCRA class actions alleging violations of 15 U.S.C. § 1681b(b). *Hargrett v. Amazon.com DEDC LLC*, No. 8:15-CV-2456-T-26EAJ, 2018 WL 3860192, at *2 (M.D. Fla. July 17, 2018); *Graham*, 2017 WL 2799928, at *2; *Coles*, No. 8:17-cv-829-T-17-AEP (ECF 45); *Fosbrink*, No. 8:17-cv-01154-JSM-CPT (ECF 58). That experience and the research conducted in this case have provided counsel with "knowledge of the applicable law." FED. R. CIV. P. 23(g)(1)(A)(iii). Further, "the resources that counsel" have "commit[ted] to representing the class" have been substantial, as evidenced by their work in this case. FED. R. CIV. P. 23(g)(1)(A)(iv) (Plaintiffs' Counsel will submit further detail regarding their expenditure of

resources in this case with their motion for an award of attorneys' fees and expenses). In short, Plaintiffs' Counsel have represented the Settlement Class well and will continue to do so.

The Named Plaintiffs have also represented the Settlement Class well. They have answered questions, gathered documents, and provided valuable insights into Defendant's screening process. They have no conflicting interests with those of Class Members. The Court should appoint them as Class Representatives.

> **D.     The Notice Should Be Approved Because The Form And Manner Of The Notice Satisfies The Requirements Of Rule 23 And Due Process.**

The Notice of Class Action Settlement to be delivered to the Settlement Class is appended as Exhibit B to the Settlement Agreement. (*See* Ex. 1, Agreement, Ex. B.) The content of the proposed class notice and the method for notifying members of the Settlement Class satisfy the requirements of Federal Rules of Civil Procedure 23(c)(2)(B) and (e)(1) and comport with due process.

Under Rule 23(e)(1), when approving a class action settlement, the court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." FED. R. CIV. P. 23(e)(1). In addition, for classes certified under Rule 23(b)(3), courts "must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." FED. R. CIV. P. 23(c)(2)(B). Rule 23(c)(2)(B) also sets out the required contents of the class notice. *Id.* The procedures described in the Agreement for informing Class Members of the settlement and the Notice of Proposed Class Action Settlement comply with these Rules.

The proposed notice plan is reasonable and provides the best notice practicable to the Settlement Class. Under the Agreement, the Notice of Proposed Class Action Settlement will be sent to each Class Member via electronic mail obtained through Defendant's records, with a

follow-up postcard notice (Exhibit B to the Settlement Agreement), should electronic delivery fail, by first class mail to the last known addresses of Class Members based on information contained in Defendant's records or obtained by the third-party Settlement Administrator. (*See* Ex. 1, Agreement § 4.4.) Notice by electronic and traditional mail are recognized as sufficient to provide due process to known affected persons as long as the notice is "reasonably calculated . . . to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *DeHoyos*, 240 F.R.D. at 296 (sending notice by mail is preferred when all or most class members can be identified); *see Hargrett*, 2018 WL 3860192, at *3 (approving of notice by email and noting "[t]he Court finds that this is the best practicable notice under the circumstances and is reasonably calculated, under all the circumstances, to apprise the Settlement Class Members of the pendency of this Action, the terms of the Settlement Agreement, and their right to object to the Settlement Agreement or exclude themselves from the Settlement Class."). The Agreement also includes provisions to ensure that a reasonable effort is made to locate members whose notices are returned undelivered and to re-send the Notice of Proposed Class Action Settlement to these persons to the extent possible. (*See* Ex. 1, Agreement §§ 4.4–4.5.)

The content of the Notice of Proposed Class Action Settlement satisfies Rule 23(c)(2)(B) and due process requirements. "A settlement notice need only satisfy the broad reasonableness standards imposed by due process." *In re Katrina Canal Breaches Litig.,* 628 F.3d 185, 197 (5th Cir. 2010).  Due process is satisfied if the notice provides class members with "information reasonably necessary for them to make a decision whether to object to the settlement." *Id.*

The Notice of Proposed Class Action Settlement is written in language that is easy to understand. The Notice informs members of the Class of the nature of the case, the definition of the settlement class, the claims and defenses, and the benefits members will receive. The Notice

also contains information regarding the right of Class Members to retain their own attorney, their right to request exclusion from the Class, the time and manner for requesting exclusion, the binding effect of the class judgment, and the details of the Court's Final Fairness Hearing should Class Members want to attend. (*See* Ex. 1, Agreement, Ex. B); *see also* FED. R. CIV. P. 23(c)(2)(B). Because the Notice of Proposed Class Action Settlement communicates the essential terms of the proposed Settlement in a manner that complies with Rule 23(c)(2)(B) and due process, the Court should approve its distribution to the Settlement Class.

## IV. THE COURT SHOULD APPROVE A SCHEDULE AND PROCEDURES FOR A FAIRNESS HEARING, OPTING OUT, OBJECTING, AND FILING A MOTION FOR ATTORNEYS' FEES AND INCENTIVE AWARDS.

Plaintiffs request that, in conjunction with preliminarily approving the Settlement, the Court schedule a Final Fairness Hearing to determine whether to finally approve the Settlement. Plaintiffs also request that the Court approve the deadlines and procedures the Settlement Agreement provides for opting out, objecting, and filing a motion for attorneys' fees, expenses, and an incentive award for Plaintiffs. Under the Settlement Agreement, the schedule would be as follows:

| Event | Timing |
|---|---|
| Settlement Administrator mails Notice | Within 60 days of Preliminary Approval Order |
| Deadline for Motion for Attorneys' Fees, Expenses, and Incentive Award | 15 days before the Final Fairness Hearing |
| Deadline for Objections | 60 days after Notice is mailed by Administrator |
| Deadline for Opt Outs (Exclusion Requests) | 60 days after Notice is mailed by Administrator |
| Deadline for Motion for Final Approval | 15 days before Fairness Hearing |
| Fairness Hearing | TBD by Court |
| Distribution of Settlement Payments | 45 days after the Effective Date |

The procedures for opting out and objecting are set forth in detail in Section 4 of the Settlement Agreement, and the procedures for filing a motion for attorneys' fees, expenses, and an incentive award are set forth in Section 4.9.1. Plaintiffs respectfully request that opt out and objection procedures be included in the Preliminary Approval Order. *See Johnson*, 2017 WL 6060778, at *2–3; *see also Almanzar*, 2015 WL 10857401, at *4–5.

## V.   **CONCLUSION.**

The Court should approve the Agreement on a preliminary basis because the proposed settlement is fair, reasonable, and adequate. Certification of the Class; the appointment of Plaintiffs as Settlement Class Representatives; appointment as Settlement Class Counsel; and attorneys' fees and costs are appropriate under Rule 23 for settlement purposes. The Notice of Proposed Class Action Settlement should be approved for distribution to the Settlement Class because it meets the requirements of Rule 23 and due process.

WHEREFORE, Plaintiffs Shawana Sanders and Kenyatta Williams, for themselves and on behalf of all others similarly situated, request that the Court grant their Motion and enter an Order of preliminary approval.

Dated this 28th day of June, 2019.

/s/ *Craig C. Marchiando*
Craig C. Marchiando, Fla. Bar No. 1010769
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
Telephone: (757) 930-3660
Fax: (757) 930-3662
email:  craig@clalegal.com

MARC R. EDELMAN, ESQ.
Florida Bar No.: 0096342
MORGAN & MORGAN, P.A.
201 N. Franklin Street, Suite 700
Tampa, Florida 33602

Telephone: 813-223-5505
Facsimile:  813-257-0572
medelman@forthepeople.com

C. RYAN MORGAN, ESQ.
Florida Bar No.: 0015527
MORGAN & MORGAN, P.A.
P.O. Box 4979
Orlando, Florida 33802
Telephone: 407-420-1414
Facsimile: 407-245-3401
Rmorgan@forthepeople.com

ANDREW FRISCH, ESQ.
Florida Bar No.: 27777
MORGAN & MORGAN, P.A.
600 North Pine Island Road, Suite 400
Plantation, Florida 33324
Telephone: 954-workers
Facsimile: 954-327-3013
Afrisch@forthepeople.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of June, 2019, a true and correct copy of the foregoing has been electronically filed with the Clerk of the Court by using the CM/ECF system which will automatically send a notice of electronic filing to all Counsel of Record.

_____*/s/ Craig C. Marchiando*_____
Craig C. Marchiando, Fla. Bar No. 1010769
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
Telephone: (757) 930-3660
Fax: (757) 930-3662
email:  craig@clalegal.com