UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

SHAWANA SANDERS and KENYATTA
WILLIAMS on their own behalf and on behalf
of all similarly situated individuals,

    Plaintiffs,

v.                                                 Case No.: 2:18-cv-00555-UA-CM

GLOBAL RADAR ACQUISITION, LLC d/b/a
GLOBAL HR RESEARCH,
a foreign for-profit corporation,
f/k/a RADAR POST-CLOSING HOLDING
COMPANY, INC., f/k/a
GLOBAL HR RESEARCH, INC.,

    Defendant.
_____/

**PLAINTIFFS' CONSENT MOTION FOR
FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

        Pursuant to Federal Rule if Civil Procedure 23, Plaintiffs KENYATTA WILLIAMS and SHAWANA SANDERS ("Plaintiffs"), on their own behalf and all similarly situated individuals, with the consent of Defendant GLOBAL RADAR ACQUISITION, LLC, ("Defendant"), move the Court for Final Approval of Class Action Settlement. In support of their Motion, Plaintiffs states as follows:

**I.**       **INTRODUCTION.**

        The Court granted Preliminary Approval to the Parties' proposed Settlement on July 15, 2019. (ECF 45.) The Court-appointed Settlement Administrator provided notice to the Class in accordance with the Court's Order granting preliminary approval. (*Id.*) The Administrator estimates that the notice, sent via electronic and traditional mail, has reached 96.7% of Class Members. (Ex. 1, Keough Decl. ¶¶ 10–13.) The Administrator also notified the attorneys general

of all 50 states and the federal government of the terms of the Settlement, as required by the Class Action Fairness Act, on July 8, 2019. (*Id.* ¶¶ 3–4.)

The reaction to the Settlement has been overwhelmingly positive. No Class Member objected. Only one Class Member asked to be excluded from the Settlement. No governmental party objected-to or commented on the Settlement. Practically speaking, little has changed since the Court issued the Order granting Preliminary Approval confirming the Settlement is fair, reasonable, adequate, and warrants final approval.

II.     **NATURE AND STAGE OF PROCEEDINGS.**

   A.     **Background Of The Litigation.**

As the Court may recall, Plaintiffs allege that Defendant willfully violated Section 1681b(b)(1) of the Fair Credit Reporting Act ("FCRA") relating to its provision of consumer reports (commonly known as background checks) for employment purposes. (ECF 20 ¶¶ 1–13.) Section 1681b(b)(1) of the FCRA requires that consumer reporting agencies ("CRAs") like Defendant obtain from their customers certifications of compliance with 15 U.S.C. §§ 1681b(b)(2) and (b)(3) before the CRA may issue a background check. *See* 15 U.S.C. § 1681b(b)(1). Plaintiffs allege Defendant failed to meet this requirement for multiple employers, causing violations of the FCRA with each report sold not only for Plaintiffs, but for thousands of members of a putative class. (ECF 20 ¶¶ 1–15.) Defendant denies that it violated Section 1681b(b)(1) or any other section of the FCRA, and denies the allegations in Plaintiffs' Complaint.

Defendant moved to dismiss, arguing that Plaintiffs lacked standing to continue the case because they had not suffered an Article III injury. (ECF 23.) Plaintiffs opposed, arguing that the injury suffered here was sufficient to confer Article III standing. (ECF 29.) The Court denied Defendant's Motion. (ECF 30.)

Following the Court's decision on the Motion to Dismiss, the Parties engaged in formal and informal discovery, exchanged documents, responses, and information relating to the claims and Class composition. Plaintiffs served interrogatories and requests for production, to which Defendant responded. This discovery informed the key points of mediation and settlement, particularly in that it revealed that Defendant had sold reports under circumstances like Plaintiffs' to only three employer-clients, not so to all of its customers. This fact then resulted in the Parties' negotiating a settlement only as to applicants with those three employers rather than everyone on whom Defendant ran and sold a background check.

With this information in hand, the Parties participated in a full-day mediation in Tampa, Florida on May 3, 2019, under the supervision of Rodney Max. That mediation resulted in the Settlement to which the Court granted preliminary approval, and to which there have been no negative comments or objections. Plaintiffs therefore request that the Court take the next step and grant final approval to the Settlement.

    **B.    The Settlement Terms.**

Before their May 3 mediation, the Parties engaged in informal settlement discussions and exchanges of information sufficient to prepare for and inform those discussions. The mediation was successful, with Mr. Max's invaluable assistance in overcoming the key divides among the Parties'.. The Parties thereafter executed a Class Settlement Agreement and Release that the Court previously approved (the "Agreement"). (ECF 43-1.) The Agreement, as the Court will recall, includes the following principal terms:

- Certification, for settlement purposes only, of a Class of all natural persons residing in the United States, any U.S. territory, the District of Columbia, or Puerto Rico who were the subject of a consumer report furnished by Global HR for employment purposes to a client of A1 HR, Continuum, or Accesspoint between July 11, 2013 and January 11, 2019. While Defendants originally estimated the Settlement Class to number 20,878,

    the Settlement Administrator has confirmed that after receiving the Class List from Defendants, the Settlement Class consists of approximately 18,931 consumers.

- Defendant agrees to establish a gross settlement fund in the amount of $3,653,650, none of which will revert to Defendant except to potentially repay costs of settlement administration.

- Every Settlement Class member will be paid a pro rata portion of the net settlement fund without having to file a claim. The Parties originally estimated each Class Member would receive a payment of approximately $117.50, without further reduction for attorneys' fees or administration costs. With the revised, lower Class composition of 18,931, Class Members will receive more—approximately $129.25.

- Payment from the settlement fund of an attorneys' fees and costs award, if approved by the Court, not to exceed thirty-three percent of the gross settlement fund;

- Defendant will separately pay costs of associated with administration of the settlement, estimated to be seventy-five-thousand dollars ($75,000). Before any unclaimed funds are distributed to Court-approved *cy pres* recipients, Defendant may recoup these costs up to $75,000.

- Payment from the settlement fund of service awards of $5,000 to each of the Named Plaintiffs.

In return for the substantial benefits Class Members will receive, they will release all class action and individual claims that were or could have been brought under the FCRA, 15 U.S.C. §§ 1681a–x, and all claims that could have been brought under state law. (ECF 43-1 ¶ 1.19.)

### III.   **NOTICE AND ADMINISTRATION.**

    The Parties utilized a Court-approved, third-party vendor, JND Legal Administration, to notify the Settlement Class of the settlement and to provide settlement administration services. The Parties agreed that the expense of providing notice to the Settlement Class and administering the settlement would be paid separately by the Defendant, with the ability to recoup up to $75,000 of those expenses from any unclaimed funds. (ECF 43-1 ¶¶ 2.5.1.)

    On July 26, 2019, Defendant provided the Settlement Administrator an electronic file containing the names and last known mailing addresses for 20,849 Class Members. (Ex. 1, Keough

Decl. ¶ 5.) After removing duplicate records, the Class numbered 18,931. (*Id.* ¶ 6.) On August 19, the Settlement Administrator established a toll-free number and website, www.SandersFCRASettlement.com to make information about the settlement available to class members. (*Id.* ¶¶ 14, 17.) On August 22, the Settlement Administrator sent the Court approved Class Notice by electronic mail to 13,717 Class Members and by first class U.S. Mail to 4,354 Class Members who did not have known email addresses. (*Id.* ¶¶ 8, 10.) Through October 15, 2019, 12,261 Class Members had at least one deliverable email address, and 1,049 mailed Notices were returned as undeliverable. (*Id.* ¶¶ 9, 12.) After conducting advanced address research, JND was ultimately able obtain address information for 663 Class Members and re-mailed Notice to them. Of the re-mailed notices, 100 were deemed undeliverable. (*Id.* ¶ 12.) JND also posted the long-form Notice on the Settlement website, which was also identified in the Notices. (*Id.* ¶ 14.)

The Notice informed Settlement Class members of: (1) the material terms of the Settlement Agreement; (2) their right to object and how to do so; (3) their right to exclude themselves by opting out and how to do so; (4) that they will be bound by the Settlement Agreement if they do not opt out; (5) the date, time and location of the final fairness hearing scheduled by the Court; and (6) that the Court retains the right to reschedule the final fairness hearing without further notice. (Ex. 1, Keough Decl. Exs. B, C.) The Class Notices also directed recipients to the settlement website, www.SandersFCRASettlement.com, which contained additional information about the Settlement and provided the toll free number (*Id.* Exs. B, C.) These extensive efforts to provide notice to the Settlement Class are "the best notice that is practicable under the circumstances." FED. R. CIV. P. 23(c)(2)(B).

Payments to Settlement Class Members will be mailed by the Settlement Administrator by check and delivered by first-class U.S. mail, postmarked within 45 days of the Effective Date.

(ECF 43-1 ¶ 2.9.) Class Members do not have to take any action to receive their Settlement payment. (*Id.* ¶ 2.5.3.) All checks will expire sixty days after they are issued and will state the expiration date on their faces. (*Id.* ¶ 2.10.)

### IV.   REACTION TO THE SETTLEMENT.

The Settlement Class unequivocally supports the Settlement. The deadline for exclusions and objections is October 18, 2019.[1] As of this filing, there are **zero** objections (Ex. 1, Keough Decl. ¶ 22), and **one** request for exclusion. (*Id.* ¶ 20.) No government representative commented on the Settlement or objected. (*Id.* ¶ 22.)

### V.   THE SETTLEMENT CLASS HAS BEEN CERTIFIED AND NOTIFIED OF THE SETTLEMENT PER THE COURT'S ORDER.

#### A.   The Court Has Already Certified The Settlement Class.

The Court has already determined this action was proper for resolution on a class wide basis pursuant to Rule 23(a) and 23(b)(3). (*See* ECF 45 ¶¶ 4–5.)  Since the Court's Preliminary Approval Order, no objections addressing class certification were received. Thus, there is no reason to re-visit or disturb the Court's prior ruling.

#### B.   The Class Notice Met the Requirements of Rule 23(c) And Due Process.

Federal Rule of Civil Procedure 23(c)(2)(B) requires that class notice:

> [C]oncisely state in plain, easily understood language:
>
> (i)     the nature of the action;
> (ii)    the definition of the class certified;
> (iii)   the class claims, issues, or defenses;
> (iv)    that a class member may enter an appearance through an attorney if the member so desires;
> (v)     that the court will exclude from the class any member who requests exclusion;

---

[1] Should any objections or requests for exclusion be received after the deadline, Plaintiffs will supplement this brief to alert the Court of those events and, if necessary, address the merits of any objections.

    (vi)    the time and manner for requesting exclusion; and
    (vii)    the binding effect of a class judgment on members under Rule 23(c)(3).

The Court-approved Notice satisfies each of these requirements. (Exs. B–D to JND Decl.)

As to the manner of providing notice, Federal Rule of Civil Procedure 23(c)(2)(B) provides, in pertinent part, that, "[f]or any class certified under Rule 23(b)(3) the Court must direct to class members the best notice practicable under the circumstances including individual notice to all members who can be identified through reasonable effort." An individual mailing to each class member's last known address has been held to satisfy the "best notice practicable" test. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) (noting that individual mailings satisfy Rule 23(c)(2)). Increasingly and understandably, particularly in classes of this scale, courts are embracing the use of electronic mail as the primary means of providing notice to class members. *See Morgan v. Pub. Storage*, 301 F. Supp. 3d 1237, 1262 (S.D. Fla. 2016) (discussing the issue and collecting cases approving of email notice); *see also Hargrett v. Amazon.com DEDC LLC*, No. 8:15-cv-2456-T-26EAJ, 2018 WL 3860192, at *3 (M.D. Fla. July 17, 2018) (granting preliminary approval of settlement with notice to be delivered primarily by electronic mail, and to which final approval was later granted). Here, the Settlement Administrator exceeded these requirements, reaching an estimated 96% of Class Members. (Ex. 1, ¶ 13.)

    **C.**    **The Settlement Remains Fair, Reasonable, And Adequate.**

In determining whether a proposed settlement is fair, reasonable, and adequate, the Court should consider several factors, including: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which

the settlement was achieved.² *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1240 (11th Cir. 2011). "[D]etermining the fairness of a [class action] settlement is a discretionary decision for the trial court, though it should be 'informed by the strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement.'" *United States ex rel. Balko v. Senior Home Care, Inc.*, No. 8:13-cv-3072-T-17TBM, 2017 WL 9398654, at *8 (M.D. Fla. May 2, 2017), *report & recommendation adopted*, No. 8:13-cv-03072EAKTBM, 2017 WL 3268200 (M.D. Fla. Aug. 1, 2017). It is long-settled that in reviewing these factors, "the Court may 'rely upon the judgment of experienced counsel for the parties,' and 'absent fraud, collusion, or the like,' is 'hesitant to substitute its own judgment for that of counsel.'" *Burrow*, 2019 WL 4247284, at *7 (quoting *Canupp v. Liberty Behavioral Health Corp.*, 417 F. App'x 843, 845 (11th Cir. 2011),

---

² December 1, 2018 amendments to Rule 23 require consideration of a similar, non-exhaustive list of factors:

    (A) the class representatives and class counsel have adequately represented the class;

    (B) the proposal was negotiated at arm's length;

    (C) the relief provided for the class is adequate, taking into account:

        (i) the costs, risks, and delay of trial and appeal;

        (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

        (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

        (iv) any agreement required to be identified under Rule 23(e)(3); and

    (D) the proposal treats class members equitably relative to each other.

FED. R. CIV. P. 23(e)(2); *see Burrow v. Forjas Taurus S.A.*, No. 16-21606-CIV, 2019 WL 4247284, at *7 (S.D. Fla. Sept. 6, 2019). Plaintiffs discuss these factors below.

8

which in turn cites *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)). Here, the Court has already preliminarily found these standards to be satisfied. Since nothing has changed since that decision, the Court should affirm it by granting final approval to the Settlement.

        **1.**        **Class Counsel and the Plaintiffs have adequately represented the Class.**

This factor requires the Court to consider whether there was "an adequate information base" before negotiating and entering-into the Settlement. *Burrow*, 2019 WL 4247284, at *7. Here, there was such an information base. As set forth above and in the Motion for Preliminary Approval, the Parties exchanged discovery requests and information formally and informally, and such formed the foundation for the Settlement reached after a full-day mediation. The information knows was sufficient to convince Defendant's insurer to put $3.6 million into the Settlement, providing more than $125 per Class Member. There is nothing at all to indicate that settlement negotiations were anything other than good-faith, and conducted at arm's length. The Court should therefore conclude this factor favors settlement.

        **2.**        **The Settlement resulted from arm's-length bargaining.**

Rooting out potential collusion between the Parties to a settlement is a key facet of the Court's reasonableness analysis. *Burrow*, 2019 WL 4247284, at *8. Here, the Court has already concluded that "[t]he Settlement Agreement entered into by and among the Settling Parties has been negotiated at arm's-length and is approved on a preliminary basis as fair, reasonable, and adequate." (ECF 45 ¶ 4.) Nothing has changed since that conclusion, and nothing presented since that decision suggests otherwise.

Moreover, courts regularly conclude that the presence of a neutral in the settlement process further confirms that class interests were protected. *Burrow*, 2019 WL 4247284, at *8 (citing Rule 23 Advisory Committee Notes stating this proposition). The negotiation results—a settlement that

9

pays a genuine cash award that is above the statutory minimum the Class may obtain with a complete victory at trial, with Class Members having to take no action to receive their benefit—confirm that Counsel and the Named Plaintiffs achieved that result from good-faith, adversarial bargaining. The Court should therefore conclude that this requirement is met. *See Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1318–19 (S.D. Fla. 2005) (approving class settlement where the "benefits conferred upon the Class are substantial, and are the result of informed, arms-length negotiations by experienced Class Counsel").

### 3. The relief provided to the Class is adequate.

In determining whether the relief provided through the Settlement is adequate, the Court should take into account:

> (i) the costs, risks and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).

FED. R. CIV. P. 23(e)(2)(C). Many of these points are subsumed within those addressed by the Eleventh Circuit in *Faught*, 668 F.3d at 1240, as the likelihood of success and range of possible recovery are overlapping issues to which the Court should focus in assessing fairness. *Burrow*, 2019 WL 4247284, at *9.

On whichever measure, the inquiry is not just the value or nature of the settlement achieved, but "whether that relief is reasonable when compared with the relief 'plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing.'" *Id.* The question then is whether the settlement is within the range of reasonableness rather than the most-favorable potential result of continued litigation. *Id.* It is well-settled that a settlement that pays a fraction of the potential recovery is not per se unfair or inadequate, as "'[a] settlement can be satisfying even

if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery.'" *Id.* (quoting *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990) (alteration in original)). "It is important that the Court weigh the benefits Class Members will receive from the Settlement against the risks of litigating to final judgment and the Class Members recovering nothing." *Id.*

This case presents an excellent example of at least adequate relief to Class Members. As explained above, there is a true possibility of a total loss for Class Members if Plaintiffs cannot certify their Class or maintain that certification throughout the pendency of the case. Plaintiffs must also prove that Defendant's conduct was willful, the failure of which prohibits the recovery of statutory damages of between $100 and $1,000, and punitive damages at the Court's discretion, that Plaintiffs seek. (ECF 20 ¶¶ 15, 71); 15 U.S.C. §§ 1681n, 1681o. Defendant will of course have its defenses and arguments to present on the merits as well, and there too exists a genuine chance that the Court will side with one or more of those arguments and hand Defendant a victory. In any of these scenarios, the Class would get nothing.

The $129 Class Members stand to receive is above amounts in similar FCRA settlements to which courts, including within this District, have granted final approval. *See, e.g.*, *Hargrett v. Amazon.com DEDC LLC*, No. 8:15-cv-02456-WFJ-AAS (M.D. Fla. Nov. 16, 2018), ECF 187 (granting final approval of settlement that paid class members of one FCRA class a maximum of $125, and members of another a maximum of $150); *Speer v. Whole Food Mkt. Grp., Inc.,* No. 8:14-cv-3035-T-26TBM (M.D. Fla. Jan. 1, 2016), ECF 68 (approving $40 gross recovery for FCRA class members); *Simons v. Aegis Commc'ns Grp.,* No. 2:14-cv-04012 (W.D. Mo. Oct. 15, 2014) (ECF 29) (granting preliminary approval of improper disclosure settlement with payment of $35 per class member); *Beverly v. Wal-Mart Stores, Inc.*, No. 3:07-cv-469 (E.D. Va. May 1, 2009)

(ECF 39) (approving settlement providing for $54 gross amount per class member). The result here is excellent for Class Members, particularly given they must take no action to receive it.

What the Class *will* receive because of the Settlement is outstanding also because of the context in which this case is brought. Under the FCRA, the jury may award Plaintiffs and the Class between $100 and $1,000 apiece if Plaintiffs are successful at trial. 15 U.S.C. § 1681n(a); *Irvine v. 233 Skydeck, LLC*, 597 F. Supp. 2d 799, 803–04 (N.D. Ill. 2009) (discussing statutory damages range in context of vagueness challenge and noting "courts that have found that a reasonable jury tasked with determining the proper amount of damages for a FACTA violation will be able to do so within the statutory range"). With that being the range, there is no predicting that a jury would view a trial victory for Plaintiffs more worthy of an award of $1,000 versus $100. Thus, Plaintiffs could certify their Class, maintain that certification through trial and any interlocutory appeals, survive any dispositive motions, win at trial on liability and willfulness, and be rewarded with a jury verdict of $100 per Class Member. Or, $29 *less* than the Settlement stands to pay the right now, guaranteed, with no risk. The benefit the Settlement will confer on Class Members is squarely within the range of potential awards Congress has deemed appropriate for a victorious Plaintiff. All Class Members are truly giving up is their ability to collect punitive damages, an outcome that is by no means a certainty. The Court should therefore conclude that the benefits are adequate.

As to the process by which those benefits will be tendered to Class Members, little need be said because it is as simple as it could be. Class Members will automatically receive checks, and can use the benefits for whatever they choose. There is no claims process, no provision of information, or other task a Class Member must undertake to receive their benefits. On the whole, the Court should find that these factors favor finally approving the Settlement. *Burrow*, 2019 WL 4247284, at *10.

### 4. The Settlement treats Class Members identically to one another.

The Settlement treats all Class Members the same. There are no ranges for payments or other distinction from one consumer to another. They will all receive a pro rata payment that will actually be larger than the estimate communicated in the Notices. All payments will therefore be the same for all Class Members, cementing that they are equitably treated relative to each other. FED. R. CIV. P. 23(e)(2)(D).

Likewise, the release given is not disproportional to Class Members' recovery. The release targets the types of claims brought in this case, and is not a general release of any and all claims of any kind against Defendant. The release is narrowly tailored to address just claims under the FCRA, without releasing any other claims an individual may have against Defendants. The Court should find that these factors too favor final approval.

### 5. There is no opposition to the Settlement.

Low opt-out and objection rates weigh in favor of finally approving a settlement. *Burrow*, 2019 WL 4247284, at *10 (collecting cases). Here, the objection rate is currently as low as it can be—zero. Such is unusual for a nationwide class action, given the advent of professional objectors, who will often invoke spurious challenges to any class action in an effort to extort a fee. *See Edelson PC v. Bandas Law Firm PC*, No. 16 C 11057, 2018 WL 3496085, at *2 (N.D. Ill. July 20, 2018) (discussing the conduct of professional objectors and the reasons for their involving themselves in class-action settlements). Yet, none have. The complete absence of opposition to the settlement confirms that it is fair, reasonable, and adequate. *James v. JPMorgan Chase Bank, N.A.*, No. 8:15-cv-2424-T-23JSS, 2017 WL 2472499, at *1 (M.D. Fla. June 5, 2017) ("The absence of opposition to the settlement militates heavily toward approval.").

13

One Class Member has opted out, so one of more than 18,900 Class Members prefers not to be included. The infinitesimal opt-out percentage likewise weighs in favor of granting final approval.

### 6. The proposed Service Awards and attorneys' fees are reasonable.

Plaintiffs have addressed the requested attorneys' fees and Service Awards in a separate brief. For purposes here, Plaintiffs note that no one has objected to either amount, both of which were negotiated after the Class relief was agreed-upon. (ECF 43-2 ¶ 25.) And Defendant does not oppose the amount requested, further showing its reasonableness.

In sum, all things considered, nothing has changed since the Court's grant of preliminary approval that could cast doubt on the appropriateness of that decision. The Court should therefore affirm it with final approval of the Settlement.

## V. **CONCLUSION**.

The Court should finally approve the Settlement and enter the attached Proposed Order. The proposed settlement is fair, reasonable, and adequate, as confirmed by not only an objective analysis of the benefits, but also through the subjective views of Class Members who have shown no opposition. Final certification of the Class; the confirmation of appointment of Plaintiffs as Settlement Class Representatives and their attorneys as Settlement Class Counsel; and the granting of the proposed awards of attorneys' fees and costs are appropriate under Rule 23.

WHEREFORE, Plaintiffs Shawana Sanders and Kenyatta Williams, for themselves and on behalf of all others similarly situated, request that the Court grant their Motion and finally approve their Settlement.

Dated this 17th day of October, 2019.

   /s/ *Craig C. Marchiando*
Craig C. Marchiando, Fla. Bar No. 1010769
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
Telephone: (757) 930-3660
Fax: (757) 930-3662
email:  craig@clalegal.com

MARC R. EDELMAN, ESQ.
Florida Bar No.: 0096342
MORGAN & MORGAN, P.A.
201 N. Franklin Street, Suite 700
Tampa, Florida 33602
Telephone: 813-223-5505
Facsimile:  813-257-0572
medelman@forthepeople.com

C. RYAN MORGAN, ESQ.
Florida Bar No.: 0015527
MORGAN & MORGAN, P.A.
P.O. Box 4979
Orlando, Florida 33802
Telephone: 407-420-1414
Facsimile: 407-245-3401
Rmorgan@forthepeople.com

ANDREW FRISCH, ESQ.
Florida Bar No.: 27777
MORGAN & MORGAN, P.A.
600 North Pine Island Road, Suite 400
Plantation, Florida 33324
Telephone: 954-workers
Facsimile: 954-327-3013
Afrisch@forthepeople.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of October, 2019, I caused a true and correct copy of the foregoing to be electronically filed with the Clerk of the Court by using the CM/ECF system, which will automatically send a notice of electronic filing to all Counsel of Record.

      /s/ *Craig C. Marchiando*
Craig C. Marchiando, Fla. Bar No. 1010769
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
Telephone: (757) 930-3660
Fax: (757) 930-3662
email: craig@clalegal.com